No. 22-55345

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LISA KIM,
individually and on behalf of all others similarly situated,
Plaintiff-Appellee

v.

RICH ALLISON and STEVE FRYE,
Objectors-Appellants,

v.

TINDER, INC., a Delaware corporation, et al.,
Defendants-Appellees

On Appeal from the Judgment of the United States District Court
for the Central District of California, Hon. John F. Walter
No. 2:18-cv-30393-JFW

## OBJECTORS-APPELLANTS' REPLY BRIEF

Kimberly A. Kralowec
KRALOWEC LAW, P.C.
3132A 24th Street
San Francisco, CA 94110
Telephone: (415) 546-6800

Alfred G. Rava
RAVA LAW FIRM
3667 Voltaire Street
San Diego, CA 92106
Telephone: (619) 238-1993

Michael Rubin
P. Casey Pitts
Jonathan Rosenthal
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151

Attorneys for Objectors-Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................ 1

ARGUMENT .................................................................................. 4

    I.     The district court applied the wrong legal standard in approving the class settlement. ................................................................. 4

    II.    The district court failed to respond to significant objections. ............. 11

    III.   The district court again ignored that class members are putative class members in *Candelore*. ................................................. 14

    IV.   Kim is a patently inadequate and atypical class representative.. ........ 21

    V.    The parties' second collusive settlement provides almost no benefit to class members and should not have been approved. .......... 26

CONCLUSION ............................................................................. 35

CERTIFICATE OF COMPLIANCE ....................................................... 36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ................................................................11

*Am. Beverage Ass'n v. City & Cty. of San Francisco*,
916 F.3d 749 (9th Cir. 2019) (en banc) ...................................................4

*In re Apple Inc. Device Performance Litig.*,
2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) .........................................7

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ............................................................*passim*

*Balderas v. Massage Envy Franchising, LLC*,
2014 WL 3610945 (N.D. Cal. July 21, 2014) .........................................32

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..................................................................30

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ...................................................................8

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............................................................9, 10

*Candelore v. Tinder*,
19 Cal. App. 5th 1138 (2018) ..........................................................*passim*

*Carter v. City of Los Angeles*,
224 Cal. App. 4th 808 (2014) ..................................................................31

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ..................................................................26

*Conde v. Open Door Mktg., LLC*,
223 F. Supp. 3d 949 (N.D. Cal. 2017)....................................................26

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) .........................................................................12, 13

*Hall v. Superior Court*,
   150 Cal. App. 3d 411 (1983) ..............................................................................28

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................22, 24

*Hegler v. Borg*,
   50 F.3d 1472 (9th Cir. 1995) ...............................................................................23

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) (en banc) ............................................................14

*In re Hyundai & Kia Fuel Econ. Litig.*,
   No. 13-ml-02424 (C.D. Cal. June 11, 2015) ....................................................14

*Javorsky v. Western Athletic Clubs, Inc.*,
   242 Cal. App. 4th 1386 (2015) ...........................................................................16

*Jones v. Wells Fargo Bank, N.A.*,
   2015 WL 661757 (Cal. Ct. App. Feb. 17, 2015) ...............................................31

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ......................................................................*passim*

*Kim v. Tinder, Inc.*,
   2019 WL 2576367 (C.D. Cal. June 19, 2019) ...................................................10

*Koby v. ARS Nat'l Servs., Inc.*,
   846 F.3d 1071 (9th Cir. 2017) ............................................................................34

*MAG US Lounge Mgmt., LLC v. Ontario Int'l Airport Auth.*,
   2022 WL 17664000 (9th Cir. Dec. 14, 2022)....................................................35

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..............................................................................13

*In re Monotronics International, Inc. Telephone Consumer Protection
   Act Litigation*,
   No. 5:11-cv-00090 (N.D. W.Va. Aug. 31, 2017) ...............................................31

*Moralez v. Whole Foods Mkt., Inc.*,
    897 F.Supp.2d 987 (N.D. Cal. 2012) ................................................... 31

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. Of San
    Francisco*,
    688 F.2d 615 (9th Cir. 1982) ....................................................... 12, 30

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v.
    Anderson*,
    390 U.S. 414 (1968) .................................................................... 31

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ................................................. *passim*

*Saucillo v. Peck*,
    25 F.4th 1118 (9th Cir. 2022) .................................................. *passim*

*United States v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) ................................................. 16, 17

*Viking River Cruises v. Moriana*,
    142 S.Ct. 1906 (2022) .................................................................. 28

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
    Litig.*,
    895 F.3d 597 (9th Cir. 2018) ........................................ 9, 10, 15, 23

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ...................................................... 29

*Washington Mut. Bank, FA v. Superior Cour*t,
    24 Cal. 4th 906 (2001) ................................................................. 28

**Statutes**

9 U.S.C. § 16 .................................................................................. 22

Cal. Civ. Code
    § 52 .............................................................................................. 30
    § 1668 .......................................................................................... 29
    § 3513 .......................................................................................... 29

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................23, 29, 34

**INTRODUCTION**

Tinder and Kim cannot overcome the legal errors, including several that require reversal *per se*, that permeate the district court's approval of their hastily revised settlement—a settlement just as worthless to most of the class as the prior collusive settlement that this Court previously rejected.

*First*, Tinder and Kim do not dispute that a district court may not apply a presumption of reasonableness when evaluating the fairness of a pre-certification class action settlement. Here, the district court cited that improper presumption *four separate times* in its final approval order. Tinder and Kim try to avoid reversal by asserting that (1) the court did not actually apply that improper presumption, but (2) even if it did, the error was harmless, and (3) even if not harmless, Objectors waived their challenge by failing to anticipate that the district court would apply that improper presumption. Those arguments fail. The district court's order repeatedly presumed the fairness and reasonableness of the parties' settlement, and this Court has squarely held that a district court's application of such a presumption requires automatic reversal of its settlement approval order. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022); *Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

*Second,* the district court's failure to address, let alone rebut, Objectors' substantive objections independently requires *per se* reversal. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) ("[T]he district court … must give a reasoned response to all non-frivolous objections."). While Tinder and Kim acknowledge that the district court did not "overtly" address those objections in its order, they contend the court sufficiently addressed them elsewhere. It did not. For example, neither in the cookie-cutter sections of the final approval order labeled "Adequacy" and "Typicality" nor anywhere else did the court "give a reasoned response" to the Objectors' challenges to Kim's adequacy and typicality, two essential elements for settlement class certification. The district court's outright failure to address those and other objections violated its fiduciary duty to protect the class. *See id.*

*Third*, the district court flatly disobeyed this Court's instructions regarding the importance of *Candelore v. Tinder*, 19 Cal. App. 5th 1138 (2018), a binding appellate opinion establishing what constitutes age-based discriminatory pricing under California's Unruh Civil Rights Act. This Court previously held that the district court, in approving the prior settlement, had improperly "discounted the strength and value of the class members' claims" when it criticized *Candelore* and ignored its law-of-the-case significance. *Kim*, 8 F.4th at 1179. The district court made the exact same error this second time around. Even worse, it justified its

refusal to comply with this Court's holding by relying on the *dissent*'s disagreement with that holding.

*Fourth*, Tinder and Kim have no answer to the indisputable fact that Kim's settlements with Tinder were negotiated from a position of unique and exceptional weakness—creating a conflict of interest that bears fatally on Kim's adequacy and typicality as a class representative. After Kim was compelled to individual, non-class arbitration, she lost all leverage to negotiate a fair *classwide* settlement with Tinder—and it showed. Because Kim had waived every potentially meritorious challenge to arbitrability, she and Tinder were fully aware that she, alone among class members, would *never* be permitted to litigate a class action, and that the only way Kim could seek a hefty "incentive" payment for herself and substantial fees for her attorneys would be to agree to a classwide settlement in exchange for a classwide release of all claims. As before, Kim and her lawyers agreed to a wholly inadequate settlement because they had no leverage to bargain for more.

*Fifth*, the settlement still provides *no* monetary recovery to 96.5% of the class, gives Tinder an inexplicably massive discount on its potential liability, and relies on in-kind and injunctive relief nearly identical to the provisions this Court already found provided little or no benefit to class members. *See Kim*, 8 F.4th at 1179. While Tinder and Kim rely almost entirely on Tinder's supposed defenses to justify these paltry terms, the district court never assessed the strength or

3

plausibility of those defenses—which are extremely weak, for the reasons *Candelore* makes clear.

Once again, the district court has rubberstamped a collusive agreement that waives hundreds of thousands of class members' claims in exchange for "benefits" that accrue only to Kim, her counsel, and a tiny fraction of the class. This time, the court's errors are even more egregious, because they directly violate this Court's prior mandate. For these reasons, as described more fully below, the settlement approval order must, once again, be reversed.

## ARGUMENT

## I. <u>The district court applied the wrong legal standard in approving the class settlement.</u>

Four times, the district court's settlement approval order presumed the fairness and reasonableness of the settlement. *See* Opening Brief (Op. Br.) 29–34. This is reversible error. The Ninth Circuit has "never endorsed applying a broad presumption of fairness" and has "actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification." *Saucillo*, 25 F.4th at 1131. Applying an "erroneous legal standard" is always an abuse of discretion, *see Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc), and this Court has repeatedly held that this *particular* error mandates automatic

4

reversal. *See Apple*, 50 F.4th at 782-83; *Saucillo*, 25 F.4th at 1133; *Roes*, 944 F.3d at 1048.

Tinder and Kim do not defend the district court's improper presumptions. Instead, they ask this Court to ignore those errors. But that request is foreclosed by this Circuit's unambiguous rule that even a careful and thorough final approval order (much less a rubberstamp as here) must be reversed if the court erroneously presumed that the settlement was reasonable.

Tinder suggests that Objectors somehow *waived* their objection to the Court's incorrect legal standard by not asserting it before the final fairness hearing. Tinder Br. 13. Objectors could hardly have objected to the district court's written ruling approving the settlement—in which its reasoning, including the legal standard, was presented—before the ruling issued. This Court rejected that precise waiver argument in *Saucillo*, 25 F.4th at 1130 ("[A]n objector need not be an oracle and predict issues that will arise for the first time in the district court's final order.").[1]

---

[1] Tinder attempts to distinguish *Saucillo* on the ground that here, "the district court recited and applied the same (correct) legal standard in its preliminary approval order as it did in its final approval order[.]" Tinder Br. 14 n.7. But the district court's articulation of some *correct* legal principles in its preliminary approval order (as discussed further below) could not have put Objectors on notice that the court would apply the *incorrect* legal standard in its final approval order. That is especially so since the district court promised that its final approval order would be much more thorough than its "cursory" preliminary approval order. *See*

On the merits, Kim argues that the district court's order is somehow vindicated by this Court's passing observation that the district court's prior final approval order "correctly recited the fairness factors under Fed. R. Civ. P. 23(e)(2)." Kim Br. 46 (quoting *Kim*, 8 F.4th at 1174). But the mere recitation of those factors did not relieve the district court of its obligation to apply heightened scrutiny to pre-certification class action settlements, as *Kim* itself held. 8 F.4th at 1179 ("[C]onsideration of these eight *Churchill* factors alone is not enough to survive appellate review.") (quotation omitted). Nor did recitation of the applicable factors cure the district court's application of improper presumptions of fairness. *See Roes*, 944 F.3d at 1049 (reversing although "the district court appropriately referred to … the factors that our Circuit has identified as relevant to assessing … a class settlement"); *Saucillo*, 25 F.4th at 1132 (reversing notwithstanding that "[t]he district court … applied the … factors"); *Apple*, 50 F.4th at 776 ("commend[ing]" the "district court's thoughtful and thorough analysis" of the factors, but nonetheless reversing).[2]

---

3-ER-462 ("[A]t this preliminary approval stage, the Court conducts a less searching inquiry of each factor and only requires that the proposed settlement be within the range that would likely receive final approval by the Court."). In any event, this Court has discretion to "consider issues not presented to the district court[.]" *Saucillo*, 25 F.4th at 1129; *see also Apple*, 50 F.4th at 782 n.9.

[2] There is no merit to Kim's suggestion that this Court's "mandate" from the prior appeal precludes a challenge to the district court's application of the wrong legal standard on remand. *See* Kim Br. 46-47.

Next, Tinder and Kim argue that the district court did not really mean what it said. Kim contends the court cited the wrong standard "in passing," in "dicta," or "incidentally." Kim Br. 16, 47-48, 51. Not so. Even if a single assertion of an improper standard could be discounted, *but see Roes*, 944 F.3d at 1049, the district court stated *four separate times* it would presume the settlement's fairness based on: the supposedly "arms-length" negotiations, 1-ER-24-25; Kim's counsel's recommendation, 1-ER-25; the absence of a large number of objections, 1-ER-25; and the mediation, 1-ER-28. Those *exact same statements* were held to require reversal in prior cases. *See, e.g.*, *Roes*, 944 F.3d at 1049 (presumption of fairness based on arm's-length negotiations); *Saucillo*, 25 F.4th at 1124 (presumption of fairness based on neutral mediator); *Apple*, 50 F.4th at 782-83 (presumption of reasonableness based on recommendations of plaintiffs' counsel).[3]

Tinder contends that although the district court *cited* the wrong standard, it did not "apply" that standard. Tinder Br. 16. That is wrong, too. In analyzing the sufficiency of the settlement, the district court repeatedly stated it was presuming

---

[3] Kim seems to think a district court's erroneous legal standard may be discounted if expressed in parenthetical quotations. *See, e.g.*, Kim Br. 47. But the district court twice expressed its presumptions in the main text. *See* 1-ER-25. Regardless, this Court has previously reversed for application of improper presumptions identified in parentheticals. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022867, at *6 (N.D. Cal. Mar. 17, 2021) (quoting presumption based on arm's-length negotiations in a parenthetical), *rev'd by* 50 F.4th at 783.

fairness. Tinder suggests that reversal would be required only if the court demonstrably "shifted the burden to Objectors." Tinder Br. 16, 18. But neither *Roes*, *Saucillo*, nor *Apple* said anything about such burden-shifting; they each held that a district court means what it says when announcing that it is presuming a settlement's fairness. Indeed, while *Apple* acknowledged that the trial court had likely *correctly* "applied heightened scrutiny," it reversed because the court's "written order relied on a flawed legal standard." 50 F.4th at 783.[4]

Kim finds it significant that the district court did not cite the wrong legal standard in the first paragraph of its analysis but instead cited it (repeatedly) in *subsequent* paragraphs. *See, e.g.*, Kim Br. 51 n.44. What matters, however, is not the order of a court's paragraphs, but the substance of its reasoning and whether "[a]pplying [an] erroneous presumption cast a shadow on the entirety of the district court's order." *Saucillo*, 25 F.4th at 1133. Here, it did. The district court applied the *identical* presumptions that required reversal in prior cases. Moreover, it relied on those presumptions in the two paragraphs *immediately preceding its conclusion*

---

[4] Tinder's reliance on *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021), is misplaced. *Briseño* reaffirmed the rule of *Roes*, while rejecting the argument that the district court had improperly shifted the burden to the objector to prove the settlement's inadequacy. *Id. Briseño* did not address the kind of *per se* reversible presumptions considered in *Roes*. The more recent *Saucillo* and *Apple* decisions confirm that reversal based on an erroneous presumption of fairness does not require *additional* evidence that the district court shifted the burden to objectors.

that "the revised Settlement is fair, reasonable, and adequate." 1-ER-24-25. That is even *more* problematic than merely citing the presumption in a formulaic "legal standard" section. *See Saucillo*, 25 F.4th at 1132 (noting that *Roes* reversed "[d]espite the district court … only 'beginning its analysis with the presumption'") (cleaned up).

Kim asserts that if the district court's presumptions "were simply deleted entirely from the Order, it would have had no impact whatsoever on the result." Kim Br. 50-51; *see also id*. 52 (similar). There is no evidence to support Kim's speculation, and this Court has rejected that type of argument even in circumstances—unlike here—where the district court's analysis was otherwise unimpeachable. *See Apple*, 50 F.4th at 783 ("[W]hile the district court's probing analysis suggests that it may have applied heightened scrutiny, its written order relied on a flawed legal standard.").

Tinder and Kim rely on the concept of harmless error. *See* Tinder Br. 19 n.10 (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020)); Kim Br. 45, 49, 52 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 613 (9th Cir. 2018)). This Court has made clear, however, that "application of an incorrect legal standard … is not subject to review for harmlessness." *Apple*, 50 F.4th at 783; *accord Saucillo,* 25 F.4th at 1133; *Volkswagen*, 895 F.3d at 613. Tinder's cited case, *Campbell*, is inapposite: it

9

found only that the district court's error in analyzing a clear-sailing provision did not independently require reversal because "no one factor is dispositive" in determining a settlement's fairness. 951 F.3d at 1127. *Campbell* does not undermine the well-established rule that application of the incorrect legal standard always requires reversal. Similarly, *Volkswagen* disclaimed harmless error review, and merely stated (in dicta) that this Court would be reluctant to upset a $10 billion settlement based on a "purely technical" procedural error. 895 F.3d at 613; *see Saucillo*, 25 F.4th at 1133 ("Failure to respond to a 'purely technical' objection is not analogous to employing an incorrect legal standard.").

Tinder also argues that the district court did not apply the wrong legal standard because, despite repeatedly citing the wrong standard, the court also stated that "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." Tinder Br. 15 (quoting 1-ER-22). But in the previous appeal, this Court concluded that the district court had applied an incorrect standard even though the *exact same sentence* was in the court's prior final approval order. *Compare Kim v. Tinder, Inc.*, 2019 WL 2576367, at *6 (C.D. Cal. June 19, 2019) *with Kim,* 8 F.4th at 1182 ("[T]he district court did not subject the settlement agreement to 'a higher standard of fairness and a more probing inquiry[.]'").

Tinder cites no authority that a court's repeated application of the wrong legal standard can be cured by its invocation of the correct standard elsewhere. Indeed, in *Apple*, this Court emphasized that the district court's analysis was "thoughtful and thorough," that it undertook a "careful consideration of the settlement's fairness," and that its "probing analysis suggests that it may have applied heightened scrutiny." 50 F.4th at 776, 782, 783. Yet this Court still reversed because the district court's "written order explicitly states that the court applied a presumption that the settlement was fair and reasonable." *Id.* at 776. Unlike in *Apple*, the final approval order here contains *no* indication that the court actually performed the "more probing inquiry" this Court found absent in the prior appeal. *Kim*, 8 F.4th at 1175; *see* Op. Br. 24-26.

In short, this Court's precedents establish a clear, bright-line rule. Because the district court applied improper presumptions when approving the settlement, its order must be reversed.

## II.    The district court failed to respond to significant objections.

This Court holds district courts to a "high procedural standard" when approving a class action settlement, *Kim*, 8 F.4th at 1178, a "procedural burden" that is even "more strict" when the settlement is pre-certification, as here. *Allen v. Bedolla*, 787 F.3d 1218, 1223-24 (9th Cir. 2015). Specifically, "[t]o survive appellate review, the district court … must give a reasoned response to all non-

11

frivolous objections" raised by class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation omitted). Each non-frivolous objection requires "a reasoned response by the court on the record," and even frivolous objections require "a statement on the record of the reasons for so considering the objection." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. Of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

The district court did not come close to meeting this "high procedural standard" as it failed even to *acknowledge* most of Objectors' objections.

For instance, Objectors strenuously urged below that Kim's uniquely weak position made her inadequate to represent the settlement class. *See infra* at 21-26. Tinder and Kim do not dispute that the district court failed to "overtly" address this objection. *See* Kim Br. 25, 54; Tinder Br. 43-44. Instead, they argue it was sufficient that the district court addressed adequacy and typicality generally. *Id.* But those discussions were threadbare and conclusory and did not respond to Objectors' specific objections. With respect to Kim's adequacy, the court stated only that "Plaintiff's claims are typical of those of other Class Members," that Kim "share[s] the common goal of protecting and improving consumer and privacy rights throughout California," that she "ha[s] no conflicts" with other class members, and that she "ha[s] been prosecuting this action vigorously on behalf of the Class." *See* 1-ER-20. Those generic statements did not address the specific

12

(and, frankly, devastating) objections to Kim's adequacy that Objectors asserted, including to the clear conflict of interest between Kim and all other class members once Kim was ordered to individual arbitration. *See* 2-ER-274-75; 3-ER-470-71; FER-12-14.

The district court bears the "procedural burden" to provide a reasoned *response* to all non-frivolous objections. *Dennis*, 697 F.3d at 864. Requiring district courts to address all non-frivolous objections—*especially* objections that raise foundational due process concerns—is the only way to ensure those objections are fairly and reasonably considered and that class settlements are not just rubberstamped with copy-and-paste approval orders. Nothing in the district court's order suggests that Objectors' substantive objections were considered at all, let alone in a reasoned manner.

The district court also never addressed Objectors' arguments about collusion. 2-ER-275; 2-ER-282; FER-26-28. Perhaps because of its improper presumptions, 1-ER-24, 1-ER-28, the district court failed to address whether the hastily negotiated settlement, announced just *weeks* after this Court's remand when Tinder was preparing to oppose class certification in *Candelore*, presented risks of collusion. *See* 3-ER-470; FER-21-22; FER-26-28; *cf. Molski v. Gleich*, 318 F.3d 937, 955–56 (9th Cir. 2003) (settlement reached within four months of filing raised collusion concern). This gap in the court's analysis is particularly striking given the

"suggestions of collusion" this Court had attributed to the previous settlement.
*Kim*, 8 F.4th at 1179.[5]

Objectors also made specific objections to the class notice, *none* of which
were addressed by the district court. 3-ER-472-473; FER-28-31. Tinder and Kim
assert that these objections were addressed in the district court's preliminary
approval order, Tinder Br. 47-48; Kim Br. 55, but that is demonstrably untrue. *See*
3-ER-455, 3-ER-461-62.

Objectors challenged the class notice's failure, *inter alia*, to provide class
members critical information about the Unruh Act's $4,000 statutory penalties, this
Court's rejection of the prior settlement, and the impact of *Candelore* on any class
member who chose to opt out. Tinder argues that due process did not require this
information, Tinder Br. 48-49, but that misses the threshold procedural point—it
was the *district court*'s obligation to analyze and respond to those substantive
objections.[6]

---

[5] Tinder contends that Objectors' collusion objections involved
"speculation," ignoring that this Court found potential collusion between the very
same parties in the prior settlement negotiations. That circumstance itself
distinguishes *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir.
2019) (en banc). Moreover, the district court in *Hyundai* provided a reasoned
response to the collusion objection, unlike the court here. *See In re Hyundai & Kia
Fuel Econ. Litig.*, No. 13-ml-02424 (C.D. Cal. June 11, 2015), Dkt. 495 at 18.

[6] Kim's reliance on the final fairness hearing, Kim Br. 53, fails because the
district court did not respond to any objections at that hearing. *See* 2-ER-50–54.

Finally, Tinder and Kim's reliance on *Volkswagen* is misplaced. That case concluded that two objections to which the district court did not respond were frivolous. 895 F.3d at 613. One was "faulty on its face" because it falsely described the settlement. The other was frivolous because it claimed the notice inadequately described an issue that the notice in fact made "eminently clear." *Id.* Objectors' objections are not comparable to the frivolous objections in *Volkswagen*.[7]

## III. The district court again ignored that class members are putative class members in *Candelore*.

In the previous appeal, this Court held that the district court improperly "discounted the strength and value of the class members' claims" because it relied on *Javorsky v. Western Athletic Clubs, Inc.*, 242 Cal. App. 4th 1386 (2015), and thus ignored "that the settlement class members are also putative members of the class in *Candelore*—and the settlement agreement therefore releases claims where *Candelore* is the law of the case[.]" *Kim*, 8 F.4th at 1179. Judge Callahan, in dissent, disagreed and stated that the district court had appropriately discounted the significance of *Candelore*. *Id.* at 1182 (Callahan, J., dissenting).

---

[7] *Volkswagen* also stated, in dicta, that it would be reluctant to upset, based on "purely technical" objections, a settlement of "such overall benefit to the class" that "otherwise evinced no signs of collusion, unfairness, or irregularity." *Id.* The settlement here, which *undisputedly* provides *no* monetary benefits to 96.5% of the class, bears no resemblance to the historic $10 billion settlement in *Volkswagen*. Further, Objectors' objections below pertained to core issues of fairness and due process, not technicalities.

On remand, the district court made clear that it believed this Court's majority was wrong, and insisted on continuing to analyze the claims as it had before (*i.e.*, as the dissent thought appropriate). Accordingly, the district court again gave no weight to *Candelore* as a law-of-the-case decision that substantially strengthens the negotiating position of every class member, and it again relied on *Javorsky* as a basis for dismissing the class members' released claims as not "particularly valuable." *See* 1-ER-22.

Tinder and Kim *concede* that the district court adopted the dissent's analysis when evaluating the value of the released claims. *See* Kim Br. 53 ("Judge Callahan's dissent … was well within Judge Walter's discretion to follow under the rule of mandate doctrine."); Tinder Br. 22 (the district court's remand holding "was not a clear abuse of discretion, and in fact, Judge Callahan agreed"). Under the controlling majority decision, though, the district court was not permitted to disregard *Candelore*, whose impact was central to the disagreement between the majority and dissent. *See Kim*, 8 F.4th at 1182 (Callahan, J., dissenting). Under the rule of mandate, "*whatever was before this court, and disposed of by its decree,* is considered as finally settled." *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000). The district court "cannot vary it, or examine it for any other purpose than execution … or review it, even for apparent error, upon any matter decided on appeal*;* or intermeddle with it, further than to settle so much as has

been remanded." *Id.* (emphasis omitted). Having already been reversed for unduly discounting *Candelore* in analyzing the value of the class members' released claims, the district court erred in doubling down the second time around.

Tinder and Kim incorrectly assert that the district court changed its approach to *Candelore* on remand. They point to a single sentence in which the district court wrote: "[I]n determining the strength of Plaintiff's case for purposes of granting final approval to the revised Settlement, the Court has carefully considered the impact of *Candelore* on the Class Members' claims." 1-ER-22. Tinder and Kim ignore the context of that sentence. Just before it, the district court stated that: (1) the Ninth Circuit was wrong about the district court's prior analysis, which had not "'ignored' *Candelore*'s impact" but had "instead, found that the rationale of *Candelore* was less 'compelling'" than *Javorsky*; (2) as "the dissent concluded," the district court had previously reasonably found that the claims against Tinder were not "particularly valuable," because *Candelore* was decided on demurrer; and (3) according to the dissent, the district court had "reasonably considered that the objectors had not identified" relevant comparator cases under the Unruh Act. *Id*. Only at *that* point did the district court state that it "has carefully considered the impact of *Candelore* on the Class Members' claims." *Id.* The court then immediately added, "However, as the dissent concluded, because *Candelore* merely held that the plaintiff's claim under the Unruh Act could survive demurrer,

the Court has also – as it must – considered the impact of *Javorsky* and other relevant case law in determining the strength of Plaintiff's case." *Id.*

The district court's analysis of *Candelore* thus repeated its prior flawed analysis, which the majority rejected but the dissent embraced, and added a sentence that it had "carefully considered" *Candelore*—apparently, in deciding again to give it no weight. The district court's insistence on resurrecting its prior analysis (and then saying it did so deliberately) violated this Court's instruction to *correct* its prior treatment of *Candelore*, which wrongly "discounted the strength and value of the class members' claims." *Kim*, 8 F.4th at 1179.

As the rest of the district court's settlement approval order confirms, the district court failed to give *Candelore* any weight in assessing the value of the claims the class would be releasing through the *Kim* settlement. The district court once again "ignored"—in fact, never *mentioned* in its substantive analysis—that every class member is a putative class member in *Candelore* who could therefore benefit from the California appellate court's law-of-the-case ruling regarding Tinder's liability for unlawful age discrimination under the Unruh Act. 1-ER-21-26.

Kim suggests that the district court gave proper consideration to *Candelore* because it "entertained lengthy argument about it at oral argument." Kim Br. 53. But the hearing transcript only underscores the district court's refusal to

18

acknowledge this Court's mandate and the impact of *Candelore* on the class member claims that this settlement abandons. When counsel for Objectors pointed to this Court's instructions regarding *Candelore* and noted that Kim had wholly ignored *Candelore* in her final-approval opening brief, the district court interjected to remark that "It wasn't ignored by Judge Callahan," and described Judge Callahan's conclusion that the district court had previously "acted reasonably and within its discretion." 2-ER-51-52. That was the extent of the district court's analysis of *Candelore* at the final approval hearing.

Lastly, Tinder repeats unsuccessful arguments from the prior appeal regarding the merits of the Court of Appeal's decision in *Candelore* and predictions regarding how *Candelore* will proceed. Those previously rejected arguments are still wrong.

Tinder's assertion that *Candelore* was only a demurrer decision overlooks that, while the Court of Appeal analyzed the legality of Tinder's "alleged" age-based pricing policy, *Tinder does not dispute that its age-based pricing policy operates **exactly** as alleged* in Candelore's complaint. The "demurrer" decision from the Court of Appeal concluding that these facts as pleaded *violate the Unruh Act* was therefore effectively a decision on the merits, which is presumably why Tinder settled *Kim* on collusive terms immediately after the *Candelore* decision.

19

Tinder reasserts that it still has viable defenses in the state court *Candelore* action. But those "defenses" are frivolous. Tinder first suggests that under *Candelore*, "only those members of the older group who in fact were less well off than the members of the younger group could have [an Unruh Act] claim." Tinder Br. 23. That argument is precluded by *Candelore*, which held that Tinder's policy discriminated against *all* older users, regardless of their personal financial condition. Tinder's trivial argument would upend the basic principle of civil rights law that a plaintiff need not prove that she does not personally fit whatever stereotype underlies the defendant's discrimination. *Candelore*, 19 Cal. App. 5th at 1152, 1155.

Tinder next suggests that other, unrelated legislation vindicates its age-based discriminatory pricing. That argument was expressly rejected by the Court of Appeal as well, *id.* at 1153, and Tinder has never pointed to any statute that would support charging older people more for using a dating app—nor could it.[8]

Finally, Tinder suggests in a footnote that Candelore would need to establish that "he did not purchase Tinder Plus in order to sue Tinder." Tinder Br. 24 n.11. That argument has nothing to do with Tinder's liability to the class under the

---

[8] Tinder unsuccessfully relied on the Affordable Care Act in *Candelore* itself, and its citation to a nonbinding resolution about "financial fitness month" is frivolous. *See* Tinder Br. 24.

Unruh Act, and is also wrong. Ample evidence shows that Candelore was an active

Tinder user, and he was unquestionably harmed by Tinder's age-based surcharge,

as the Court of Appeal found, *see Candelore*, 19 Cal.App.5th at 1151.[9]

Tinder and Kim also repeat the *Kim* dissent's arguments regarding the

supposed difficulty of certifying a class in *Candelore*. Those arguments did not

persuade this Court before, and nothing about them has changed. Regardless, the

Court need not try to predict the outcome of a class certification motion in state

court.[10]

## IV.    Kim is a patently inadequate and atypical class representative.

In their opening brief, Objectors explained why Kim and her counsel were

inadequate to represent the certified settlement class and why Kim's circumstances

make her claims atypical. Kim, alone out of *the entire class*, has been compelled to

individual, non-class arbitration in a ruling that is not appealable under the Federal

---

[9] Tinder also quotes a recent stay order by the trial court in *Candelore*, but that order is irrelevant. After class certification was fully briefed, the trial court in *Candelore* stayed that case pending this appeal to avoid conflict with the certified-for-settlement *Kim* class. In doing so, it noted that Tinder technically still has defenses it can raise and held that it would implicate the one-way intervention rule to adjudicate those defenses on an individual rather than class basis pending the *Kim* appeal. Tinder Request for Judicial Notice at 13. But the trial court did not peer into the merits of any of Tinder's remaining "defenses." *Id.* at 11.

[10] Suffice to say that class certification has already been fully briefed in *Candelore* and Tinder's arguments against class certification are weak. *See infra* at 28-30.

Arbitration Act (notwithstanding Kim's futile notice of appeal), *see* 9 U.S.C. § 16, and which she could not have successfully challenged on appeal anyway, since she waived every possibly meritorious argument against the enforceability of Tinder's arbitration agreement. In other words, Kim's ability to bring a class action against Tinder is now precisely *zero*, and when she settled this case she was in a far weaker bargaining position with Tinder than *any* of the other 240,000 class members she seeks to represent. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

In response, Kim misrepresents the district court record, the trial court record in *Candelore*, this Court's prior decision in *Kim*, and even the briefs in this appeal. She also makes *no* attempt to rebut Objectors' common-sense argument that she negotiated with Tinder from a position of unique weakness and for that reason was unable to negotiate a fair settlement. *See Hanlon*, 150 F.3d at 1021 ("Such counsel is, almost by definition, inadequate … 'Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer.'") (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)). Because Kim's negotiating position cannot get stronger with time, and because she has proven her inadequacy and conflict of interest by agreeing to multiple reverse-auction settlements that provide zero value to the vast majority of the class, this Court should hold that Kim is an inadequate class representative.

Kim leads with (and keeps returning to) the spurious argument that this Court rejected Objectors' challenge to her adequacy in the prior appeal. *See, e.g.*, Kim Br. 1, 4, 6, 8, 15, 20, 22, 24, 37, 38, 42, 54. The truth is that this Court did not *reach* Objectors' adequacy arguments because it found so many other grounds for reversing the final approval order. *See Kim*, 8 F.4th at 1176; *cf. Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995) (law of the case doctrine "clearly does not extend to issues an appellate court did not address").

Kim also repeatedly claims that Objectors presented no legal authority in support of their adequacy arguments. *See, e.g.*, Kim Br. 39, 42, 45, 54. But Objectors cited ample authority. *See* Op. Br. 43-44, 48, 49, 50, 51; *see also* FER-14. To the extent Kim's position is that her inadequacy must be demonstrated through directly on-point precedent, she misunderstands the inquiry, which requires application of Rule 23 and due process principles to the specific facts of the case. *See Volkswagen*, 895 F.3d at 607 ("That general standard [of adequate representation] must be broken down for specific application; conflicts within classes come in many guises. For example, … [c]lass members with higher-value claims may have interests in protecting those claims … from being compromised by a class representative … who may settle more valuable claims cheaply.").

Kim contends that she pursued her claims "vigorously," Kim Br. 40, but the record shows the contrary. While Kim technically "challenged arbitration," *id.*, her

"challenge" was based on a misreading of the arbitration agreement (which, as the district court found, did not prohibit public injunctions, thus precluding her only challenge), 4-ER-728, and she waived every actually viable challenge to Tinder's arbitration provision. *See* Op. Br. 45-48. Kim asserts she "engaged in discovery," Kim Br. 40, but did not engage in *any* class discovery—the relevant consideration for adequacy. *See* FER-21-22. Kim claims she "protected the Class from Objectors through appeal," Kim Br. 40, but it was Objectors who "protected the Class" on appeal—Kim did the opposite in defending her original, woefully inadequate settlement. Kim suggests she "improved the Settlement terms at every available opportunity," *id.*, but the only "improvement" in the record is that Tinder agreed to a marginally better settlement (that still provides no benefit to the vast majority of the class) only after *Objectors* successfully appealed Kim's prior collusive settlement.

What Kim cannot dispute is that she was incapable of "vigorously" representing the class because her lawsuit was effectively over before settlement negotiations even began. *See Hanlon*, 150 F.3d at 1021 ("Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation.").

24

Regarding her lack of bargaining power and evident conflict of interest, Kim's only response is to make unsupported assertions with no factual basis. She argues that while she admittedly was compelled to arbitration, "[t]his is a risk identical to all Class Members." Kim Br. 41. That is false—tens of thousands of class members are not subject to any arbitration agreement, and *no* class members other than Kim have waived all the most plausible arguments against arbitrability. *See* Op. Br. 44-45.[11] She also asserts in a footnote that she "did not waive any of her arbitration arguments," Kim Br. 41 n.38, but provides no argument as to how that could be true, since she never made the strongest arguments against enforceability in the district court and has now been compelled to arbitration.[12]

Similarly, Kim strangely asserts that Candelore is "not even attempting to certify the Kim Class," Kim Br. 43, that he is only "focusing on a subset of approximately 7,000" class members, *id.*, and that "Objectors' counsel have openly stated that the [sic] fully intend to leave 95% of the Class out in the cold," *id.* 40.

---

[11] Kim makes the bizarre assertion that "Candelore could lose his pending motion to compel arbitration[,]" Kim Br. 41, and that "Kim is in the same position as every other Class Member, including Objectors and Candelore," *id.* 42. But Candelore's claims are not subject to any arbitration agreement with Tinder, and there is no pending motion to compel arbitration in *Candelore*. *See* Docket, *Candelore v. Tinder*, No. BC583162 (Los Angeles Super. Ct.).

[12] Kim claims that she raised a "formation" argument opposing arbitration, Kim Br. 41, but the argument was made only in a supplemental brief that the district court rejected as waived. *See Kim v. Tinder*, No. 18-cv-03093 (N.D. Cal. July 6, 2018), Dkt. 40.

That, too, is wrong: Candelore previously filed a motion to certify for litigation the exact same class certified by the district court below for settlement purposes.[13] *See* Objectors-Appellants' Request for Judicial Notice, Ex. 1 at 1.

Kim also fails to raise any substantial argument in defense of her typicality. *See* Kim Br. 39; *see also* Op. Br. 52. While citing the general standards, she ignores the crucial point that her claims are *not* typical because, unlike everyone else, she has been compelled to individual arbitration and has waived all meritorious grounds for challenging arbitrability. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (noting that in some cases, "[s]uperficial recitation of the [adequacy and typicality] factors [is] not enough"); *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 959-60 (N.D. Cal. 2017) (named plaintiffs are not typical because they are not subject to same arbitrability defense as other class members).

## V.     The parties' second collusive settlement provides almost no benefit to class members and should not have been approved.

After applying the wrong standard, ignoring major objections, refusing to follow this Court's instructions, and certifying a patently inadequate class representative, the district court further abused its discretion by granting approval

---

[13] Candelore's motion was denied "without prejudice to renewal following the Ninth Circuit's ruling in *Kim*" when the trial court stayed *Candelore* pending this *Kim* appeal. *See* Objectors-Appellants' Request for Judicial Notice, Ex. 2 at 1.

to a settlement in which 96.5% of the class will receive zero dollars, the in-kind and injunctive relief is effectively worthless, and the few class members who file claims will get less than a tenth of what they are owed. Op. Br. 53-59.

Tinder and Kim make no serious effort to explain how their settlement could be fair given the potential value of the class members' claims for statutory damages under *Candelore*'s binding analysis of Tinder's unlawful age discrimination. *See supra* at 15-21. Tinder and Kim devote page after page to denigrating the value of the claims Kim asserted while inflating the strength of Tinder's mostly untested (except unsuccessfully in *Candelore*) defenses. These arguments, which the parties simply recycled from their prior appeal, are none the better for wear.

Tinder begins by arguing that it has "strong defenses" to liability, while insisting that this Court need not resolve the merits of those defenses. Tinder Br. 29. Tinder's reliance on these supposed defenses is misplaced. Many have already been rejected by *Candelore*, which is law of the case for the claims the class members are releasing. *Kim*, 8 F.4th at 1179. *Candelore* rejected Tinder's arguments that class members were not actually harmed by Tinder's discriminatory pricing, that Tinder's discrimination was reasonable rather than invidious, that *Javorsky* controls, and that public policy supports Tinder's discriminatory practices. *Candelore*, 19 Cal. App. 5th at 1146-55. Even aside from law-of-the-

case considerations, Tinder's citations to other cases with different facts are unpersuasive in light of the California Court of Appeal's unanimous analysis in the context of Tinder's own policy.

Tinder's other contemplated defenses are also meritless. Tinder suggests that class members' claims are worthless because they are governed by Texas rather than California law (and Texas does not prohibit age discrimination, Tinder says). But under the governing California choice-of-law principles, Tinder could not avoid application of California law in a California case involving California consumers asserting claims under a California anti-discrimination statute enacted to protect California public policy. *Washington Mut. Bank, FA v. Superior Cou*rt, 24 Cal.4th 906, 917 (2001); *Hall v. Superior Court*, 150 Cal. App. 3d 411, 417 (1983). Tellingly, Tinder has not attempted to rely on its "Texas law" defense in *Candelore*—the only case in which Tinder's liability is being actively litigated.

Tinder next suggests that its arbitration agreement precludes statutory damages under the Unruh Act. Tinder Br. 29-30. But as Objectors already explained, that provision is unconscionable and violates California's public policy under the settled rule that arbitration agreements cannot waive statutory rights established for a public reason. *See Viking River Cruises v. Moriana*, 142 S. Ct. 1906, 1919 (2022); Op. Br. 47-48. Tinder asserts that this rule applies only to

employment discrimination cases, Tinder Br. 35-37 & n.15, but that distinction is baseless. *See* Cal. Civ. Code §§ 1668, 3513.

Finally, Tinder speculates that if statutory damages were awarded to each class member, Tinder's due process rights would be violated. But Tinder's cited case "stress[ed] that only very rarely will an aggregated statutory damages award … exceed constitutional limitations where the per-violation amount does not." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022). Tinder's assertions of a due process violation are undeveloped, implausible, and conclusory, and provide no basis for prematurely discounting its potential liability.

Tinder and Kim also assert that class certification is unlikely. Tinder Br. 31-38; Kim Br. 35. In *this* case, that's true. If the settlement is rejected, this case would end because Kim is the only named plaintiff and her claims were compelled to individual arbitration (in a non-appealable order, *see supra* at 22). Other than that Kim-specific fatal flaw, though, there is no reason why this case for statutory damages, based on a uniformly applied, two-tiered pricing policy that treats all older customers worse than all younger customers, could not be certified under Rule 23. Tinder's defenses, weak as they may be, present common questions that could easily be adjudicated on a classwide basis (e.g., unconscionability). Class

certification has already been fully briefed in *Candelore*, *supra* n.13, and that briefing gave no basis to doubt that a class can be certified.[14]

Even crediting Tinder's arguments, neither the district court, Tinder, nor Kim presents any reason to believe the risks they identify could justify the *massive* discount on Tinder's liability provided by the settlement. The district court's analysis gestured vaguely at *some* of these risks but did not evaluate their strength or plausibility—leaving this Court with an inadequate record on which to affirm the settlement approval. *See Officers for Just.*, 688 F.2d at 626 (district court must form "an intelligent and objective opinion of the probabilities of success should the claim be litigated"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[T]he district court should have pressed the parties to substantiate their bald assertions with corroborating evidence.").

The district court similarly erred in giving substantial weight to the "strong likelihood of protracted and contentious litigation" if the case did not settle. 1-ER-23; *see* Op. Br. 56-57. First, there is *no* possibility of protracted litigation with Kim as class representative, for the reasons stated above: if this settlement fails, her litigation ends. Second, with respect to the *Candelore* state court action, the district

---

[14] Even if Tinder were able to enforce its arbitration agreements with some class members, it would *still* be liable to those customers in arbitration for statutory damages of $4,000 per offense, plus attorneys' fees. Cal. Civ. Code § 52(a). So these agreements are not a valid basis for discounting the class's damages.

court offered no explanation why future litigation would be protracted. In fact, once class certification is decided, that case will likely be decided on summary judgment, given the law-of-the-case *Candelore* decision and the absence of any fact dispute regarding Tinder's policy. *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968) ("Although we are told that the alternative to settlement was 'extensive litigation at heavy expense' and 'unnecessary delay,' there is no evidence that this conclusion was based upon an educated estimate of the complexity, expense, and likely duration of the litigation.").

Kim also presents a laundry list of cases and settlements (none of which were cited by the district court) purporting to demonstrate that the class's Unruh Act claims have low settlement value. Kim Br. 29-33. Even the cases she cites do not support that conclusion. *See, e.g.*, *Jones v. Wells Fargo Bank, N.A.*, 2015 WL 661757, at *7 (Cal. Ct. App. Feb. 17, 2015) ($4,000 in statutory damages per incident to 880 class members); *Moralez v. Whole Foods Mkt., Inc.*, 897 F. Supp. 2d 987, 991 (N.D. Cal. 2012) (discussing damages award in prior action without identifying how damages were apportioned); *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825-26 (2014) (noting that statutory damages were likely unavailable because defendant was government entity); *In re Monotronics International, Inc. Telephone Consumer Protection Act Litigation*, No. 5:11-cv-

31

00090 (N.D. W.Va. Aug. 31, 2017), Dkt. No. 847-2 ($28 million common fund for robocalling); *Balderas v. Massage Envy Franchising, LLC*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (settlement fund of 8% of maximum recovery is "on the low end of the [permissible] spectrum").[15]

With respect to the value of the settlement, neither Tinder nor Kim presents any reasoned justification for its economic terms. The $5.2 million common fund represents pennies on the dollar with respect to Tinder's potential exposure, with no justification given for such a steep discount. Op. Br. 54, 58. Indeed, the only apparent rationale for the settlement amount is that it is sufficient to permit Kim's counsel to request the same $1.2 million in fees provided by the original settlement.

Nor do Tinder and Kim provide any convincing rationale for using a claims-based settlement process in which 96.5% of the class will receive no monetary recovery at all. Tinder does not dispute that it has records identifying each class

---

[15] Kim states that "this is a routine consumer protection class action involving technical violations of a statute that resulted in zero out of pocket loss for Class members." Kim Br. 29. While Kim's description of her own lawsuit is telling, it is inaccurate. As the California Court of Appeal held, Tinder's age-based policy operated as a surcharge on older users, not merely a "youth discount." *Candelore*, 19 Cal. App. 5th at 1151. *Candelore* emphasized that the type of invidious discrimination evident in Tinder's policy is dangerous for society and no mere "technical" violation. *Id.* at 1151-52. Companies in California cannot charge differential pricing based on age any more than they can use other individualized personal characteristics to drive profits—that is the clear holding of *Candelore*.

member and exactly how much they overpaid because of Tinder's discriminatory pricing policy. *See* Op. Br. 54 n.11. Tinder claims that it lacks mailing addresses and bank numbers for the class members. Tinder Br. 39 n.19. But even if true (an issue the district court never explored), that is a feeble excuse for requiring burdensome claim forms in the age of electronic payments—especially since Tinder has email addresses for nearly all class members and information regarding the "Apple or Google account[s]" through which class members paid the discriminatory fees. *Id.*; *see* FER 30. Courts are rightly suspicious of claims-based settlements, and Tinder and Kim offer no reassurance to dispel such suspicions here. *See* Op. Br. 54 n.11.[16]

With respect to in-kind benefits, Tinder concedes it has not changed its "Super Likes" policy for existing users of its premium services (such as, presumably, all or most of the small percentage of class members who still use Tinder). Tinder Br. 40 n.20. As a result, the settlement's in-kind benefits are exactly as worthless as the nearly identical benefits evaluated by this Court in the

---

[16] Tinder and Kim claim Objectors' counsel "conceded" that the settlement distributions will be "significant" and "substantial," Tinder Br. 39; Kim Br. 23-24, but they take counsel's statement out of context. *See* 2-ER-66 ("[W]e're going to have a very small number of people ultimately participating in this class…[W]hat [Tinder and Kim] have effectively done by using a claims-made settlement is there will be a certain significant – a substantial payment to the very small number of class members who decide to participate.").

prior appeal. *See Kim*, 8 F.4th at 1179. Most of the class won't even receive *those*, since 75% no longer have Tinder accounts "[f]or many obvious reasons." *Id.*

Tinder and Kim highlight the settlement's injunctive relief, Tinder Br. 38-39, Kim Br. 30, but fail to address the problem this Court identified in the last appeal—that the agreed-upon relief (unchanged from the prior settlement) provides no benefit to *any* class members because it only applies to *new* users. *Kim*, 8 F.4th at 1179, 1181 (injunctive relief provides a "benefit of zero" to the class). The injunctive relief Kim negotiated represents the worst of all worlds. Tinder will equalize prices for new users by *raising* its prices, providing no benefit to anyone except Tinder itself, while its discrimination against class members will persist because it will continue charging *existing* older users a higher price than users grandfathered into Tinder's discriminatory "discount." *Id.*; 4-ER-520.

All told, the settlement agreement approved by the district court fails to meet fundamental standards of fairness, reasonableness, and adequacy under Rule 23. The class is forced to release demonstrably valuable claims, and most class members will receive almost nothing in return. The district court abused its discretion in approving the settlement. *Koby v. ARS Nat'l Servs., Inc.,* 846 F.3d 1071, 1079 (9th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the decision below should be reversed. Further, because the district judge has shown "adamance in making erroneous rulings," and "to preserve 'the healthy administration of the judicial and appellate processes, as well as the appearance of justice,'" this matter should be reassigned on remand. *MAG US Lounge Mgmt., LLC v. Ontario Int'l Airport Auth.*, 2022 WL 17664000, at *3 (9th Cir. Dec. 14, 2022).

Respectfully submitted,

Dated: March 3, 2023                    By:    /s/ Jonathan Rosenthal
                                               Jonathan Rosenthal

                                        Michael Rubin
                                        P. Casey Pitts
                                        Jonathan Rosenthal
                                        ALTSHULER BERZON LLP

                                        Kimberly A. Kralowec
                                        KRALOWEC LAW, P.C.

                                        Alfred G. Rava
                                        RAVA LAW FIRM

                                        *Attorneys for Objectors-Appellants*

35

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-55345

I am the attorney or self-represented party.

**This brief contains** | 8,376 | **words,** including |  | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⦿ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　□ it is a joint brief submitted by separately represented parties.

　■ a party or parties are filing a single brief in response to multiple briefs.

　□ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/Jonathan Rosenthal | **Date** | March 3, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*